**Minnie L. TATUM et al., Plaintiffs-Appellees and Cross-Appellants,**

v.

**F. David MATHEWS, Secretary of Health, Education and Welfare, Defendant-Appellant and Cross-Appellee.**

**Nos. 75–1695 and 75–1696.**

United States Court of Appeals, Sixth Circuit.

Decided Sept. 2, 1976.

Argued Feb. 11, 1976.

George J. Long, U. S. Atty., Louisville, Ky., William Kanter, Harry R. Silver, Civil Div., Appellate Sect., Dept. of Justice, Washington, D. C., for appellant in No. 75–1695 and appellee in No. 75–1696.

Kurt Berggren, Legal Aid Society of Louisville, Barbara Wolkowitz, Louisville, Ky., for appellee in No. 75–1695 and appellant in No. 75–1696.

Before PECK, MILLER,* and LIVELY, Circuit Judges.

* Honorable William E. Miller died on April 12, 1976, and did not participate in this opinion.

JOHN W. PECK, Circuit Judge.

This class action was brought on behalf of individuals in Kentucky, who began receiving Aid to the Permanently and Totally Disabled (APTD) benefits after July 1, 1973, but before December 31, 1973, and were initially determined to be ineligible for benefits under the federal Supplemental Security Income (SSI) program, which supplanted the Kentucky APTD in January, 1974.

In October, 1972, Congress repealed the categorical assistance program of federal grants to state administered disability assistance programs, and in its stead established the SSI program, which the federal government would administer and under which it would assume the burden of providing benefits to those persons defined as disabled by the Act. 42 U.S.C. § 1381 *et seq.* As originally enacted, the SSI program included a "grandfather clause," whereby persons receiving disability benefits as of December, 1973, under a state plan in effect in October, 1972, would automatically be considered disabled for purposes of the SSI program. Pub.L.No.92–603. On December 31, 1973, Congress amended the grandfather clause to require that in addition to receiving benefits in December, 1973, an individual must have received benefits for one month prior to July 1, 1973. The purpose of this "rollback" provision was to prevent states from transferring their welfare recipients onto the disability rolls in anticipation of the federal takeover. The consequence of this amendment was that all persons who became qualified under a state plan subsequent to July 1 had to meet federal standards of disability in order to be· eligible under the SSI program.

Because of the harsh result and administrative difficulties which would have ensued had the Secretary simply not paid any disability benefits to these so-called "rollback" recipients, the Secretary ordered that benefits be paid to all such persons for up to three months upon a basis of presumptive disability until a determination of eligibility was made. The Secretary relied upon 42 U.S.C. § 1383(a)(4)(B) as authority for his action. In March of 1974, Congress enacted Pub.L.No.93–256, which codified the Secretary's action and authorized payment of presumptive benefits until the end of 1974, pending an initial determination of SSI eligibility.

In Kentucky, as in other states, the Secretary made initial SSI eligibility determinations on these rollback cases based upon a review of the records of the state disability assistance program. No hearing was afforded those recipients found not disabled prior to termination of their benefits. However, following termination they were furnished an opportunity for a full evidentiary hearing on the question of their eligibility.

The district court in this case issued a preliminary injunction, enjoining the Secretary from withholding SSI benefits until plaintiff class members had been given notice and an evidentiary hearing. In a subsequent order the district court clarified the injunction by specifying that retroactive benefits from the date of termination were to be paid class members. The Secretary appealed, challenging the jurisdiction of the district court and the granting of relief, including retroactive benefits to the plaintiff class. The plaintiffs' cross-appeal challenges the district court's limiting of the plaintiff class to those individuals residing in the Western District of Kentucky, contending that those residing in the balance of the state should be included.

## I.  Jurisdiction

The government contends on appeal that the district court lacked subject matter jurisdiction.[1] It is currently the plaintiffs' position that in light of the Su-

---

1. In a supplemental memorandum the government concedes subject matter jurisdiction exists, at least insofar as plaintiffs' claim for prospective relief is concerned. However, because subject matter jurisdiction cannot be conferred by consent, this court will examine the question.

preme Court's recent decision in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), jurisdiction may be founded upon 42 U.S.C. § 405(g), which provides:

"[a]ny individual, after any final decision of the Secretary made after a hearing to which he was a party, * * * may obtain a review of such decision by a civil action . . . ." [2]

In *Mathews v. Eldridge,* the plaintiff was contesting termination of his Title II disability benefits, without a prior hearing as violative of his right to due process. The Supreme Court held that § 405(g) gave the district court jurisdiction to hear plaintiff's procedural claim, once it was established that a claim for benefits was presented to the Secretary, and that some decision was made by the Secretary. 424 U.S. at 324, 96 S.Ct. at 899. See also *Johnson v. Mathews,* 539 F.2d 1111 (8th Cir. filed June 15, 1976).

In the instant case, the district court's delineation of the plaintiff class [3] excluded those who had not made a claim for benefits, and thus we find this situation to be virtually identical to that presented in *Eldridge,* where the court held that denial of the request for benefits constituted a final decision for the purposes of Section 405(g) jurisdiction over the constitutional claim for a hearing.[4]

## II.   Procedural Due Process

■ The question whether the Fifth Amendment requires that procedural due process in the form of a pre-termination hearing be afforded these plaintiffs requires a preliminary determination of

whether plaintiffs had a "property" interest in the continued payment of SSI benefits. See *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

The Supreme Court in *Board of Regents v. Roth* specified:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." 408 U.S. at 577, 92 S.Ct. at 2709.

After examining the circumstances of this case, we agree with the other circuits which have addressed this issue and conclude that the members of the plaintiff class had a protected property interest. *Johnson v. Mathews,* 539 F.2d 1111 (8th Cir. 1976); *Ryan v. Shea,* 525 F.2d 268 (10th Cir. 1975); *Brown v. Weinberger,* 529 F.2d 514 (4th Cir. 1975), *sum. aff'g* 382 F.Supp. 1092 (D.Md. 1974).

The SSI program is essentially a continuation of the prior Kentucky APTD program, in which the plaintiffs had a property interest similar to that protected in *Goldberg v. Kelly.* The Secretary gave these rollback recipients notice that the SSI program would replace APTD and that they would henceforth receive their disability checks from the United States Government. Subsequently, rollback cases received SSI checks, including increases in benefits as they occurred, until such time as they were notified of a review and then of their ineli-

2. Section 405(g) is made applicable to the SSI program by 42 U.S.C. § 1383(c)(3).

3. The class was defined as:
"Those persons who were placed on state rolls for the disabled persons, APTD, after July 1, 1973, and prior to December 31, 1973, and whose SSI benefits have either been terminated, suspended or reduced without giving to them a due process type hearing but merely affording to them a reconsideration due process type hearing after their benefits

have been terminated, suspended or reduced."   District Court Opinion at 7.

4. Because of our reliance on the Supreme Court's decision in *Eldridge,* we need not reach the question of whether this court's decision in *Hunt v. Weinberger,* 527 F.2d 544 (6th Cir. 1975), holding the Administrative Procedure Act to be an independent grant of jurisdiction in cases seeking to review the Secretary's refusal to reopen a claim, would be extended to provide jurisdiction on these facts.

gibility under federal law. We reject the Secretary's contention that these rollback recipients should be treated as initial SSI applicants with no interest in continuation of benefits, since it is clear that that is not the way the Secretary treated them in making his initial determination. We conclude instead that plaintiffs had more than a "unilateral expectation" or an "abstract need or desire" for benefits, and did in fact have a "legitimate claim of entitlement" and hence a protected property interest in the continuation of benefits.

The Secretary contends that even if this court finds plaintiffs had a property interest in the continuation of benefits, such an interest terminated on December 31, 1974, by reason of Public Law 93–256. Although 93–256 only gives the Secretary express authority to make presumptive disability payments until that date, the Secretary in fact continued to make such payments to individuals whose cases were not reviewed by that date, in accordance with the legislative intent to make such payments until an initial determination of eligibility had been made. Therefore, we find plaintiffs' protected property interest did not terminate on December 31, 1974, by reason of Pub.L. No.93–256. *Johnson v. Mathews, supra,* at 1120; *Ryan v. Shea, supra,* at 274–75.

▌ Having found rollback recipients had a property interest in continued benefits, the second part of our analysis must be to determine what process is required to protect this interest, keeping in mind "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). As the Court stated in *Eldridge,* "[R]esolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected." 424 U.S. at 334, 96 S.Ct. at 903. In *Eldridge,* the Court held that a prior hearing was not required in order to terminate Title II Social Security disability benefits. The Court distinguished *Goldberg*

*v. Kelly* on the ground that "[e]ligibility for disability benefits . . . is not based upon financial need." 424 U.S. at 340, 96 S.Ct. at 905. SSI benefits are, however, based upon financial need of the recipients. Thus, we find the protected interest in this case more closely resembles that of the plaintiff in *Goldberg v. Kelly* than that of those in *Eldridge,* and that these rollback recipients were entitled to notice and a pre-termination evidentiary hearing as provided for in *Goldberg.* ▾

### III. Retroactive Payment of Benefits

The Secretary contends that the district court erred in granting the plaintiff class retroactive benefits from the date of termination. The Supreme Court has recently rendered a decision dealing with retroactive damages, *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). In *Testan,* two government attorneys sought job reclassifications to GS–14 under the Classification Act. In remanding their case to the Civil Service Commission, the Court of Claims held that if the Commission reclassified the claimants, backpay could be awarded. The Supreme Court reversed the Court of Claims, holding any award of backpay to be barred by sovereign immunity. The claimants in *Testan* contended that the Tucker Act, which provided the jurisdiction of the Court of Claims, was a waiver of sovereign immunity. The Supreme Court rejected this argument, holding that there must be a federal statute which could be fairly interpreted as mandating the payment of damages by the government.

> "In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity, and we regard as unsound the . . . argument that all substantive rights of necessity create a waiver of sovereign immunity such that money damages are available to redress their violation." 424 U.S. at 400, 96 S.Ct. at 954.

▌ The issue in this case is thus whether the SSI statutory scheme granted

the plaintiff class a substantive right to retroactive payments of presumptive benefits. Section 405(g), like the Tucker Act, is only jurisdictional in nature and cannot itself confer the requisite substantive right. *Johnson v. Mathews, supra,* at 1123. Plaintiffs argue that this substantive right is found in Public Law No. 93–256 authorizing the payment of presumptive benefits until the Secretary's determination of ineligibility. We agree with the court in *Johnson v. Mathews, supra,* the only circuit court opinion to expressly consider this question since *Testan,* that there is nothing in this statute or the congressional intent behind it to require the government to pay benefits after the Secretary's determination. Thus we hold the district court erred and retroactive relief is barred by sovereign immunity.[5]

### IV. Class Relief

Having denied plaintiffs' right to retroactive benefits, and having been advised by the parties that at this time all Kentucky rollback recipients have been given the opportunity for an evidentiary hearing, this court finds that it need not reach the question of whether the district court erred in limiting the class to the Western District of Kentucky.

The decision of the district court is affirmed in part and reversed in part.

---

**5.** Those rollback recipients wrongfully terminated and subsequently found to be eligible will recover all of the benefits withheld from them. 42 U.S.C. § 1383(b). Thus the only persons who would benefit from a contrary ruling on our part would be those who after an evidentiary hearing were held to be ineligible.